We'll hear argument next in No. 2010-3074, Jones v. MSPB. Mr. Mitchell, you may begin when you're ready. May it please the Court. My name is Gregory Mitchell. I'm here on behalf of Mr. Brian C. Jones. Your Honors, this appeal is problematic because essentially what we have here is that at the final agency decision, there was no instructions given by the agency directive on what course Mr. Jones could take. As pointed out in my appendix, document No. 74, the assistant director of the FBI essentially advised Mr. Jones in that letter that the only appeal you have following the agency's final decision is to the district court, and therefore that's where you have to proceed. In trying to advise Mr. Jones essentially what course he had, it was prudent on me to essentially take a look at what the case sloga was. And I found two cases that were problematic in that regard, and I cite them in the brief. And one is United States v. Falso, the Supreme Court case in 88, which basically outlines the exclusive remedy for anyone who is a Federal Civil Service Reform Act employee. And, of course, the 2004 case by Justice Roberts that essentially Graham v. Ashcroft to sort of affirm that decision that, listen, if in fact you try to go around the Civil Service and Reform Act for some sort of district court review, that would be improper. So what you have here is essentially what remedy, if any, an employee such as Mr. Jones would have given the types of claims that he had in his case. Well, but the difficulty, and I think you presumably recognize this, is that the statutes which you're trying to employ to get jurisdiction before the MSPB exclude employees of the FBI, and your client is an employee of the FBI, right? It does sort, and that's where the issues are. As I point out in the brief, and as I tried to argue before the Board, is that what you have is a conceptual concern with respect to some review. And the FBI, as far as I was able to determine, if you kind of look at Chapter 23, that is the one section under the Civil Service Reform Act where the FBI employees, when you deal with discrimination and you deal with personal practice and the like, when those kind of concerns are raised or suspected, that is where you go to get reviewed. The question in this case, however, is that the initial investigation started as a Chapter 43. He was essentially accused of not doing his duty by reporting an arrest by the local authorities. And because he didn't do that, his performance fell below, and therefore he needed to be disciplined. Well, the substandard performance of not reporting it then escalated and changed into a 75, Chapter 75, which was a misconduct, gross misconduct. And thereby, if you apply Chapter 43 and 75, he clearly has no rights. Absolutely. But the concern that I have, and what I raised in the brief, which was not addressed in the reply brief, is that in 2009, this Court essentially under Dover's Department of Justice said, listen, before you get to the misconduct question, you have to determine whether or not the misconduct that's alleged by the agency has anything to do with the efficiency of the agency. Yeah, yeah, but Doe was a case in which the FBI agent was a preference eligible. And I understand that this agent is not a preference eligible. That is correct. And that's critically important because the statute draws a sharp line, as I read it, and I don't see anything in your brief that disagrees with this, between preference eligible FBI agents who do have board appeal rights and non-preference eligible FBI employees who do not, as far as I can see in the statute. Do you disagree with that distinction that's drawn in the statute? Not at all, as far as the statute draws the distinction. Right, so the Doe case is a case in which, therefore, Chapter 75 removal is fully appealable to the MSPB with all of the trappings of having to prove that there were, the agency having to prove that there was misconduct and the agency having to prove that the remedy of removal was in the, for the efficiency of the service. But none of that is true, none of those trappings and no appeal to the MSPB is true if the person is not a statutory employee. So the question is, what is it that makes Mr. Jones a statutory employee within the meaning of the pertinent statute that triggers MSPB review rights? And that's where my analysis comes in, Judge. That's what I'm looking for. And essentially, if you look at the analysis behind Fausto and Ashcroft with respect to indicating what was the intended purpose of restricting certain employees, those two cases talk about where the offense or at least the misconduct or the performance was the type of suspension or censure letter that essentially that Congress would not provide where there are rights for the non-preference employee that a preference employee would otherwise have. This is a case, though, where you have a removal action. And in those two cases where those expansive greetings to limit the control does not apply at all because clearly there's nothing with respect to what has been interpreted from the cases that a removal employee, a person with that type of sort of rights that's addressed, had absolutely no rights whatsoever for an appeal. And before the due process rights were amended in 1990, that was what the understanding was, that they would have the right to go to district court and pursue those constitutional property rights if, in fact, there was a removal. But what has occurred since then is that the court has essentially said it's exclusive now. Well, it sounds to me as if what you're arguing is that if this statute is construed, and by this statute I mean not just Title V, but if both Title V and the gloss put on it by Fausto is construed to mean that a person who is removed from federal service has no recourse at all, whether in district court or the MSPB, that that is a constitutional problem. If that's your argument, that seems to me to be an argument that would be presented, if at all, in a district court proceeding in which you would say that you can't foreclose district court APA review here because I have a constitutional right for some form of review, not in a specialized tribunal like the MSPB, which has a crisply defined range of jurisdiction. Why is that wrong? And it isn't, Judge, and again, I consider that as well. But then you have Hamlet, which is the case with the Assistant U.S. Attorney with DOJ, which sort of addressed the same issue about the expansiveness of the intent of defining the employees that are covered by the Civil Service Reform Act. And in that case, Hamlet basically, with the Assistant U.S. Attorney, they said, well, they're not listed, and we can't thereby exclude this civil service employee just by the fact that they're not listed here to say that they have no appeal rights given the body of law concerning what we want is efficiency of the service. I'm sorry. No, just the problem you have here is it's not a question of our construing the statute. Did Congress really intend to exclude employees of the FBI or not? I don't understand your argument to be, I mean, is that your argument that we should construe the various exceptions in Title V to read out the language, the employees of the FBI, because that conceptually is a problem? Well, my concern is twofold, Judge. It's one, given the status that Mr. Jones was in concerning the exhaustion issue, that if in fact it's not clear given what was before the due process amendments, given the cases of the law and what we have now with the expansive reading to protect the line of cases. Well, look at the statute. Are you saying, I mean, let's focus on the statute. Is there a lack of clarity in the statute, or are you asking us to read out the explicit exception they had for the FBI? No, not at all. How are we supposed to construe the statute? And what I propose in my brief is looking at this as defer the decision to see whether or not Chapter 23, which goes to the issue of the personnel policy violation in terms of the application of the FBI's rules, their precedent, and their laws, the agent would still have a right to have an appeal with respect to those issues. But under Chapter 23, which is the whistleblower provision, you need, in order to get before the board for an individual complaint, you need an allegation of protected disclosure. And to top it off, the board's decision in Patterson seems to suggest that even if you did, an FBI agent wouldn't have Chapter 23 rights under the whistleblower provision. So you have two different problems that seem to foreclose that avenue of appeals. And that's exactly the dilemma I was in. Right. And the concern that I had is that it wasn't clear from the way the law was evolving, particularly with the AUSA, that the sensitive mission sort of qualification they put there to carve out that exception for the AUSA was necessarily something that was directly related to the due process question of the property rights of an employee that's in the accepted service without the preference. Let me see if I understand the scope of your argument. If you're right that there is necessarily MSPB jurisdiction over an accepted service FBI agent who is not a preference eligible, that same argument would apply, would it not, to postal service employees who are under the same regime, as I understand it, which is that if you're preference eligible, you have board rights, and if you're not, you don't. I'm not sure what review that the postal employees have outside of their regime in terms of the finality of the decision. Well, if they have grievance rights, they have grievance rights. But other than that, they have rights within the agency, due process rights within the agency, and I think that's the end of the road if they don't have board rights. Then the answer to your question would be he would be in the same circumstance. Right, okay. That is correct. That's a lot of people that would suddenly be before the board. Yes, it would. Yeah, okay. Thank you. Thank you. Mr. Brooks. Am I right in thinking that the postal, setting aside the Chapter 23 issue, which I think the FBI may be in a special case, but the accepted service non-preference eligible rules apply in the same way to the postal service employees, non-managerial, I guess, postal service employees as to the FBI? The rule is the same, Your Honor. The postal service is mentioned also under 7511B8. Right. May it please the Court, Mr. Jones has the burden of establishing board jurisdiction. Mr. Jones has failed to do so. Mr. Jones does not dispute that he has no veteran's preference. Under these facts, 7511B8 is a barrier to his appealing the removal to MSPB. He doesn't argue to the contrary, but he believes he can gain jurisdiction to the board by other avenues. And the first avenue is to take what are ordinarily tack-on allegations of discrimination and prohibited personnel practices and to say that because he includes those arguments, he must have jurisdiction. But they truly are only tack-on arguments. They do not themselves create jurisdiction for board appeal. Thank you. Can I just ask you about the exclusions in 7511 compared to 2302? Yes. What's a little odd, I mean, I know one is defining exclusions for employees and the other deals with agencies. But 2302 excludes the CIA and the NSA. And when you're talking about employees under 7511, it does not seem to exclude those. So I'm just wondering. I mean, you may not know the answer, but does that mean that employees of the CIA and the NSA are, in fact, covered under Chapter 75? You see what I mean? There's a discrepancy between the limitations on employees in Chapter 75 and the limitations on agencies in Chapter 23. I see that it is possible, although if the CIA had an employee file a board appeal, they may well file a motion to dismiss such as this one and point us to the statute that answers the question. I do see the discrepancy. You're saying there might be other statutory provisions. Correct. What is Mr. Mitchell's basic submission is broadly framed is that if he can't go here and he can't go to the district court, he has nowhere to go and has been deprived of a property right as a non-probationary employee without having recourse to any form of post-agency administrative review or judicial review. Is there any, part A, is there any place that he can go? And part B, is there a constitutional problem if there's no place for him to go after the agency decision has been made on removal? He can take a case to district court if the claim is discrimination. Right, sure. He's got a Title VII argument. If he has racial discrimination or gender discrimination, whatever. But setting that category, setting Title VII aside, is there anywhere he can go with an argument that he has simply been arbitrarily terminated? I don't believe he can. The Administrative Procedures Act has been, they have attempted to use that act for this sort of argument, and it's been held that there is no constitutional issue, constitutional interest in employment under these circumstances. The Disciplinary Review Board is- Well, there's a constitutional interest in employment. I take it. I mean, that would seem to me in the due process cases that once you pass the probationary period, you have a constitutional interest. It's just the question of whether that constitutional interest is adequately addressed by a due process hearing within the agency. I mean, you wouldn't suggest, I take it, that the agency has no obligation to conduct a due process type hearing before removing somebody who's a nonprobationary employee, correct? Correct. Right. So, but the argument would be, I take it, that once that's done, there is no separate right to either post-agency administrative review by an independent administrative agency, such as the MSPB, or judicial review in either a United States district court or some specialized court, correct? Correct. All right. The second avenue that Mr. Jones has attempted to take is to argue Chapter 43 and to argue that this is actually a performance-based removal. Even taking Chapter 43, Chapter 43 twice excludes FBI employees. First, it tells you that you need to look to Chapter 75 to establish board jurisdiction. If you can appeal a Chapter 75 action, you can appeal a Chapter 43 action. And more importantly, it says FBI employees cannot file a Chapter 43 action. So it gives Mr. Jones no leverage to bring a case to the board. And the third and last avenue that Mr. Jones has taken is to argue that he has board jurisdiction under Section 7701A, which is the broad general statute that explains the MSPB's purposes. And it says that an employee may appeal to the board from any action which is appealable to the board under any law, rule, or regulation. The statute does say that you can appeal to the board an appealable action. And the language makes very clear that the board's jurisdiction is limited. Mr. Jones turns the statute on its head when he says that the board can review any case that involves any violation of any law, rule, or regulation. He misses the point that the law, rule, or regulation has to be one that specifically gives the board jurisdiction. In closing, Mr. Jones has identified no law, rule, or regulation that gives the board jurisdiction over his removal appeal. And so the board respectfully requests that the Federal Circuit affirm the board's decision that dismissed his appeal for lack of jurisdiction. Thank you, Mr. Brooks. Thank you. I don't think you have any rebuttal. Just briefly, Your Honors. The concern that I have, Judge, is twofold. The line of cases talk about creating efficiency in a line of consistent rulings, and that's essentially why this Court and the Supreme Court has directed that the issues that this board is uniquely, the Merit System Protection Board, to handle should address those issues. If that is true, then the question becomes what if you have a clear case where the misconduct that's alleged in this case, and there's a decision that's already been rendered by this Court that that type of misconduct, the nexus between the two, must be decided, and the agency is the MSM Protection Board, is the agency to make that decision, where does the employee in Mr. Jones' status go? And the issue is whether or not, given the significance of that case, the 2009 case that I refer to, and recognizing that preference employee and he had standing, the question is where does that issue get addressed, and where is the best place for that issue to be addressed? Mr. Mitchell, suppose that when Congress enacted the Civil Service Reform Act, Congress had decided, you know what, we really don't think having an MSPB is a good idea. We think agency due process hearings on such things as removals is amply sufficient for federal employees. We think that agencies do a good job with their due process hearings, and therefore, that's as far as you go. You're not going to go any farther, and what's more, under the APA, we're going to add a clause which says that among the various forms of agency action that are not reviewable by law, agency personnel actions are not explicitly not reviewable by law. There wouldn't be anything unconstitutional about that, would there? No, Judge, it would not, but I would draw the Court's attention to the dissent in the Fauso case. It was a 5-3 decision, and essentially, it talked about what was Congress's intent when you're looking to essentially eliminate rights that would otherwise exist, such as the issue to go to district court. And we know that that was the presumption that the agency had with respect to Mr. Jones, because in their letter, they told him in the letter that if, in fact, the agency makes its final decision, you can go to the district court to appeal this. And that was their understanding, and what you have is that you have a series of cases since that time that essentially written that review completely out. And the question that I pose here is, was that intended? Was it clearly that was the intention given the 2009 case where the first issue is the agency's action of declaring misconduct something that renders it misconduct is so out of the norm that there is simply no remedy whatsoever? And I would pose that that would be unfair, and that was not what was intended in this case. Okay. Thank you. Your argument next in number 2010-1179, Aratel Ltd. against T-Mobile USA. Mr. Flaherty. That's why we make them out of plastic. Noisier, that. Yeah, but they don't break. Mr. Flaherty, when you're ready. May it please the court, I am Dennis Flaherty from the law firm Australia Chalk Flaherty and Breitman PC, representing the plaintiffs' appellants, Aratel Ltd. and others. Aratel is requesting de novo review of the claim construction by Judge Robart of Claim 23 of the 275 patent. And I should note that the same claim was construed in another litigation where the same patent was being asserted by Judge Halliwell in the Southern District of New York, and Judge Halliwell's claim construction differs on several issues from Judge Robart's claim construction, at least three issues. And I should note that we have filed a notice of appeal in that case, but it only relates to Claim 9, not to Claim 23. Claim 23 was dismissed and ordered granting summary judgment by non-infringement of Claim 23 by Judge Halliwell, but Judge Halliwell's order provides that should have no preclusive effect, and also there's nothing in the order to indicate that the claim construction of Claim 23 was critical and necessary to the finding of non-infringement. Let me ask, just so I'll understand the logistics here, I mean there's so many, there are quite a number of claims of terms that we're construing here and we're challenging. Is it, am I correct that if we were to affirm a district court judge on any one of the independent constructions, on the separate constructions, that would dispose of the case, or are there pieces that need to be put together? Yes, we have to weigh in, Airtel has to weigh in on all of the issues. All of the ones listed in the stipulation, right? Yes. Right, okay. Now the 275 patent discloses systems and methods for enabling authorized users to make prepaid telephone calls, and to enable that, the inventors of eCamille invented prepaid call processing equipment called the Special Exchange. Now the Special Exchange performs the functions of user verification and call monitoring and the accounting function. The patent discloses exemplary embodiments for different uses of the Special Exchange, including what we call the Any Available Telephone embodiment, which is disclosed in Figures 1 and 3, but there's nothing in the patent to disclaim other uses of the Special Exchange. Let me ask you, what's the heart of, I guess, is there some heart to this so we can understand, I mean is your main dispute with respect to the redialing, is your main argument here that the special code doesn't have to be inputted by the calling party? That it can be done some other way? Well, the inputting of the special code has to be done in two respects. It's the Special Exchange that has to receive the special code in order to verify it, and the calling party cannot input the special code to the Special Exchange because it is separated by the regular telephone system. So the calling party has to input the code into his telephone, and then the regular telephone system has to input the special code into the Special Exchange. So where it says in Claim 23, inputting a special code, and then later it... Wait, where are you talking about, D? 23D, yes. Inputting a special code, that does not say who does the step. Well, it says inputting a special code and the number of the call party. Isn't it the person placing the telephone call that does both of those? Again, the user does both of those, inputting those into his phone, but ultimately they also have to be done by a machine at the regular telephone system in order to input those same numbers into the Special Exchange. The telephone company functions merely as a conduit to the Special Exchange. With respect to any available telephone environment, yes. Well, but why not? In other words, Judge Prost is asking, and I have the same question, that the 23D limitation, inputting a special code, does appear to be something that is done by the user, by the calling party, right? And is required to be done by the calling party. That's correct. Right, and that's confirmed, seemingly, by the language, inputted by the calling party in E, right? That's right. Now, the question is, why doesn't that, why isn't that exactly what the District Court is saying when the District Court says that you enter the special code as the calling party each time you contact the Special Exchange in order to make a telephone call or a series of telephone calls? Well, that's just how it's done in the Any Available Telephone environment, which is the exemplary embodiment disclosed in the patent. Well, why doesn't this, why doesn't the requirement that the user enter the special code and the number apply to all embodiments, necessarily, because that language is mandatory language in 23A? In other words, put it another way, describe for me your concept of how the special code is entered by the calling party in a way that makes the District Court's construction unduly narrow. The calling party could input his code as part of a replenishment process and then the value of the card would be stored in memory and then later the user would call the Special Exchange when he wanted to make a phone call and he would no longer need to input his special code if when he replenished the special code and the prepaid amount with it were registered or associated with some other number, such as his telephone number. A person who has a home telephone, there's a prepaid calling service where you buy a prepaid calling card and you have the option of calling up the Exchange and getting the card registered to your home phone number. So thereafter, it's not necessary to enter the special code when you want to make a call. You dial the Special Exchange, you need not enter the special code because the system recognizes your home phone number as registered. So in that embodiment, you would not be constrained that the inputting step would have to be performed every time you connect to the Special Exchange and you would not be constrained. I guess I understand what you're saying, I think, but when you look at the language in E, I mean, I know there are 23 claims here and this is the only one at issue. How are you getting that from E? I mean, E seems to be quite narrow and quite specific only if the special code seems to absolutely require that the special code be inputted by the calling party. Otherwise, you don't get connected to the called party. Am I misconstruing what E says here? No, but again, going back to D, D is not so limited. It doesn't say the calling party inputting a special code, so inputting a special code should be construed broadly enough to cover both the user inputting a special code as stated in E and also... But how does that work? If D allows for other parties, then E is still a necessary step to making this happen, right? So, I mean, even if D weren't there, you need E to complete the call, right? The claim should be construed so that both the user inputs a special code and then the regular telephone system inputs a special code to the special exchange. And then, yes, indeed, one of the preconditions... And what about the other part, though? It says inputting a special code and the number. Are you saying that the caller doesn't have to input the number? No, the caller... same argument. The caller also has to input the destination telephone number into his telephone, and the regular telephone system also has to send that destination telephone number to the special exchange if the special exchange is going to route it further. So both man and machine have to do it at different stages in the process, and step D just doesn't say who does it, doesn't say what that is covering, whether it's the person or the system. So your concept, I take it, of Claim 23 is that it would reach a system in which, in January, I sign up for this service and I put $1,000 of credit for my calls. And then, at that point, I would have to enter a special code, but I only have to do it once. And once I've done it, I hang up, I go away, I come back in March, June, September, and October, and each time I dial a number, I first dial in to the special exchange, but I don't have to dial my code because the special exchange recognizes my phone, and then I just dial the number of the party that I'm trying to reach. And that constitutes, inputting the special code was done back in January, right? Yes. And the number of the call party is done in October or June or March, right? That is conceivable. Well, but that would have to be your view as to how this, Claim 23, would read on a system in which you don't enter the special code every time, the user. Yes, once you registered your phone number with the company, well, every time you bought a card, you would have to register your phone number. But it's not just registering your phone number. You have to actually enter the code. Right, you have to enter the code. If I went to T-Mobile's office and they asked me, would you like to sign up, and they enter my phone number, then they wouldn't infringe, right? Because I haven't entered the special code. No, T-Mobile has. Right, but it has to be entered by the user, by the calling party. Well, it also has to be entered by the… In my hypothetical, when has the calling party entered the special code? If the sales representative, well, there's the option where the calling party does it and T-Mobile doesn't do it, but if you are in a T-Mobile store and the sales representative does it for you, I don't understand why that's not infringing. T-Mobile is performing the step. In the option issue, T-Mobile has to perform all the steps of Claim 23. So you say that if I give my telephone number to the T-Mobile salesman in signing up and the T-Mobile salesman inputs my telephone number into the system, then that constitutes a special code that is inputted by the calling party, me, right? Even if some other party other than me is going to use the system, like my wife, she wouldn't be the calling party. I mean, she'd be the calling party, but she wouldn't be the person that inputted the code, right? Well, the problem that I have, principal problem that I have is E, which says the special code inputted by the calling party. And the problem, if I go into T-Mobile and I say, I want to sign up for a phone that's going to be used by my wife, then I'm not the calling party, even though I may have inputted the special code, right? You would agree that that wouldn't read on, that wouldn't infringe 23, as I understand your construction. If the user doesn't input the special code, yes, but in other embodiments for T-Mobile, the user does input the special code, especially if he bought on the Internet and he has to call up and input the card number and it gets applied on his phone. I see I'm at rebuttal time. I'd like to save the rest of my time. Thank you. Oh, we'll save all of your rebuttal time because we've asked so many questions. Very well. Thank you. Ms. Jost. May it please the Court. I'm Shannon Jost, representing T-Mobile. Unless this Court reverses all five of the claim constructions upon which Aretel based the stipulation of non-infringement, the summary judgment of non-infringement must be upheld. Therefore, as the Court noted at the outset, if the Court finds that even one of the District Court's constructions of those five terms is correct, we're done. So what's your best one? Well, I think we've got strong arguments on all. I'd like to focus on two in particular, dialing said special exchange and inputting the number of the called party. But before we get there, I did want to respond to one point that Aretel, I believe, was making in their argument, essentially proposing that the telephone number of a subscriber could be substituted for a special code. And we disagree with that. Aretel disclaimed in prosecution at ACE 273, which is the original amendment in response to office action, that the special code could be a subscriber telephone number. That simply is not possible. And the reference again is A273. Turning to the dialing step... Can I ask you the two you're going to cover, just as a logistical matter? Sure. You talked a little about the New York, the pending appeal. Yes. And that there's some discrepancy between... Have the two you picked out, are those something that is the same with respect to the New York case as here? Or is that where the district court's client construction diverged? There is some divergence in the construction of dialing said special exchange. The Washington court, Judge Robart construed that term to mean that the calling party enters the telephone number of the special exchange by dialing the number on a telephone. The construction by the New York court was that the party makes a connection or a telephone call to the special exchange. Certainly, we believe... I will add, though, that the Southern District of New York's construction of special exchange, which is not appealed by Aretel in either this case or in the Southern District of New York's case, required that the special exchange have a regular telephone number. So there is a commonality between the two. Certainly, the requirement that there be a telephone number that can be accessed from any available telephone is consistent with the district court in Washington's construction. And Aretel has not appealed from the construction of special exchange in the Washington court and thus is bound by it. The district court construed special exchange as consisting of a telephone router, computer, and memory that is behind the local exchange and can be reached from any available telephone. The construction that Aretel proposes ignores the plain meaning of dialing, and it ignores the fact that every single reference in the specification to dialing said special exchange referred to the calling party picking up the receiver of the telephone, going off hook, and dialing the telephone number of the special exchange. In the specification in A96, the general description of the invention teaches, not in reference to any particular embodiment, that the customer acquires a special code, a credit amount, and the telephone number of the special central offices. This is at A96, column 3, lines 3 through 6, and there are additional references in that same paragraph to the customer receiving the telephone number of the special exchange. Continuing in that paragraph, at A986, column 3, lines 18 to 22, subsequently thereto, the acquiring party wishes to make a telephone call. He, the acquiring party, uses the nearest available telephone, removes the handset, picks it up, again this was back in 1985, which was long before wireless telephones were ubiquitous, and dials a special central office. Well, yes, but Mr. Flaherty deals with, I think, well, I won't put words in his mouth, but I would anticipate Mr. Flaherty would say that's just embodiments. I mean, these are illustrative embodiments of the way the system does and can work, but that doesn't exclude an embodiment of the sort that he and I were discussing with respect to my purchasing a service, in which the inputting of the special code was done at the outset. Why is it that that kind of special service in which the inputting of the special code is done at the outset is outside the scope of Claim 23? Maybe you were getting there, so I don't want to cut you off. I have more to say on this score. I understand the commonality between the dialing step and the inputting step, because both require action by the user as opposed to some other target. And there is a sequence issue, which I understand that you argue. Correct. I didn't want to push you off if you had more to say on the dialing issue, but if you didn't, if you were done with that, I wanted you to address that. I did want to point out one point in connection with the dialing issue, and I believe that the statements that Arotel made to distinguish the SAFA reference during the re-exam preclude Arotel's argument, specifically at A1047, which is the March 2002 response to office action. I believe it's in the middle of the page there, again, A1047. Arotel was distinguishing the SAFA reference as it had been applied to reject Claims 1 and 23, and Arotel stated that SAFA does not use the regular telephone system to access the device. Instead, when the user picks up the handset, the SAFA device returns a dial tone to the user.